United States District Court
Southern District of Texas
**ENTERED**
February 10, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *ex rel.* CHRISTOPHER FREY, | § | |
| *Relator,* | § | No. 4:21-CV-02024 |
| v. | § | |
| | § | |
| HEALTH MANAGEMENT | § | |
| SYSTEMS, INC., *et al.*, | § | |
| *Defendants.* | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a False Claims Act *qui tam* case.[1] Pending before the Court are Defendants' motions to dismiss the United States of America *ex rel.* Christopher Frey's ("Relator") Second Amended Complaint ("amended complaint"), ECF No. 55.[2] In this action, Plaintiff claims that Defendants—Government contractors who performed audit functions for the Medicare program—wrongfully retained unearned contingency fee payments from the Government in violation of the False Claims Act, 31 U.S.C § 3729 ("FCA"). The issue before the Court is whether the

---

[1] The district judge to whom this case is assigned referred this matter for all pretrial purposes pursuant to 28 U.S.C. § 636. Order, ECF No. 63. A motion to dismiss is dispositive and therefore is appropriate for a report and recommendation. 28 U.S.C. § 636 (b)(1)(A).

[2] The motions to dismiss are as follows: Defendant CGI Technologies and Solutions Inc., ECF No. 41 (later substituted by CGI Federal Inc.) ("CGI"), Performant Recovery, Inc. ("Performant"), ECF No. 42, Cotiviti, Inc. ("Cotiviti"), ECF No. 43, and Health Management Systems, Inc.'s ("HMS"), ECF No. 45, (collectively, "Defendants"). Plaintiff filed a response in opposition to Defendants' motions, ECF No. 50. The Defendants filed replies. CGI's Reply, ECF No. 59; Defendant Cotiviti's Reply, ECF No. 60; Performant's Reply, ECF No. 61; HMS's Reply, ECF No. 62.

amended complaint should be dismissed for failing to state a claim against Defendants for violating the FCA and conspiring to violate the FCA.

Based on thorough consideration of the briefing and applicable law, the Court finds the amended complaint should be dismissed for the following reasons: First, the FCA claims are subject to the public disclosure bar and fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b). Second, the conspiracy count fails to satisfy the pleading requirements of Rules 8(a) and 9(b) and must be dismissed because of the dismissal of the FCA claims on which it is based.

Accordingly, Defendants' motions should be granted.

## I.   BACKGROUND

Relator Christopher Frey ("Frey") was an employee of Defendant HMS from 2006 to 2013. ECF No. 55 at ¶ 2. For most of his employment with HMS, Frey was either a Vice President or Regional Vice President. *Id*. Defendants CGI, Performant and Cotiviti never employed Frey.

The Defendants participated in the Medicare Fee for Service Recovery Audit Program ("Audit Program") as Recovery Audit Contractors ("Auditors"). ECF No. 55 at ¶ 15. Auditors review Medicare claims to identify and recover improper payments and ensure that claims are paid in accordance with Medicare guidelines. *Id*. at ¶ 17. Auditors are compensated for their work through contingency fees based on a percentage of improper payments identified and recovered from, or reimbursed

to, providers. *Id.* at ¶ 28. Prior to October 31, 2016, Auditors would receive contingency fees for improper payments when identified but would have to return those fees if the payments were later determined to be proper following an appeal. *Id.* at ¶30. After October 31, 2016, Auditors received contingency fee payments only if the provider did not appeal the improper payment determination or lost their appeal. *Id.*

## A. Relator Alleges Claims Based On Unearned Contingency Fees.

Frey alleges several ways in which Defendants improperly collected and retained fees: (1) collected contingency fees for the full amount of claims that were denied only in part ("Partial Claims"); (2) collected and retained contingency fees that were subject to appeal ("Appealed Claims"); (3) misused extrapolation to deny claims that should not have been denied and collected and retained contingency fees as a result ("Extrapolation Claims"); (4) collected and retained contingency fees for overpayments providers voluntarily paid before receiving recoupment letters ("Voluntary Claims"); and (5) collected and retained contingency fees for denied claims of less than $25 ("Under $25 Claims") (collectively, "Unearned Contingency Fee Claims"). Frey alleges that Defendants engaged in these practices from 2011 to the present—with CGI ceasing to do so in 2018 when it stopped participating in the Audit Program. *Id.*

**B. Relator Alleges Claims Based On Settlement.**

In addition to the Unearned Contingency Fee Claims, the amended complaint also alleges that Defendants improperly retained fees related to a 2014 settlement between the Centers for Medicare & Medicaid Services ("CMS") and acute care and critical access hospitals regarding a dispute over the volume of denied claims ("Settlement Claims"). ECF No. 55 at ¶ 60. Pursuant to the settlement, CMS agreed to pay the providers 68% of the previously denied claims, disallowing only the remainder of the claim. *Id*. at ¶ 61. In June 2015, CMS sent letters to Defendants directing them to return contingency fees they had collected for the 68% of claims subject to the settlement (the "Technical Direction Letters"). *Id*. On February 22, 2018, Defendant Cotiviti filed its annual report with the U.S. Securities and Exchange Commission. *Id*. at ¶ 62 n.8. It provided as follows:

> In August 2014, CMS announced it would allow providers to remove all eligible claims currently pending in the appeals process by offering to pay hospitals 68% of the original claim amount. This settlement was offered to the providers and it was unknown what, if any, impact there would be for the Medicare [Auditors]. On July 1, 2015, CMS issued a Technical Direction Letter to the Medicare [Auditors], including us, indicating that Medicare [Auditors] will only be entitled to the contract contingency fee on the settled amounts of the claims, or 32% of the original inpatient claim amounts. Based on the initial lists of finalized settlements provided by CMS, we would be required to refund CMS approximately $22,308 due to the related adjustments in Medicare [Auditors] contingency fees. In 2016, CMS announced a second settlement process to allow eligible providers to settle their inpatient status claims currently under appeal beginning on December 1, 2016. These additional settlements could result in CMS claims that it is entitled to additional refunds, however, CMS has not asserted any such

claims since its initial communication and the amount of additional claims, if any, cannot be determined at this time. While there are uncertainties in any dispute resolution and results are uncertain, we have disputed CMS's findings based on our interpretation of the terms of the Medicare [Auditors] contract and our belief that the backup data provided by CMS is inaccurate and/or incomplete. Our liability for estimated refunds and appeals includes amounts for these settled claims based on our best estimates of the amount we believe will be ultimately payable to CMS based on our interpretation of the terms of the Medicare [Auditors] contract. As of December 31, 2017, we believed that it was possible that we could be required to pay an additional amount up to approximately $13,000 in excess of the amount we accrued as of December 31, 2017 based on the claims data we have received from CMS to date. As CMS completes its settlement process with the providers and updated files are provided to us, the potential amount owed by us may change. Our original Medicare [Auditors] contract with CMS expired on January 31, 2018. In connection with the expiration of the contract, we determined that we have no obligation to CMS with respect to any appeals resolved in the providers favor after the expiration date and, in addition, we believe that we have no obligation to CMS in connection with the hospital settlement processes described above.

Cotiviti Holdings, Inc. Annual Report (Form 10-K) at 99-100 99-100 (Feb. 22, 2018)

("Cotiviti Annual Report").[3]

Frey alleges that Cotiviti and the other Defendants failed to return the contingency payments as the Technical Direction Letters instructed, taking the position that they no longer were obligated to pay these funds to CMS after the

---

[3] In considering a Rule 12(b)(6) motion, courts "may consider sources outside of the complaint, such as documents incorporated into the complaint by reference and matters of which the court may take judicial notice." *Fort Bend Cnty. v. United States Army Corps of Engineers*, No. 21-20174, 2023 WL 1465325, at *8 (5th Cir. Feb. 2, 2023) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The Court has taken judicial notice of the Cotiviti Annual Report.        https://www.sec.gov/Archives/edgar/data/1657197/000155837018000958/cotv-20171231x10k.htm.

expiration of their contracts with CMS for auditing in 2018. *Id*. at ¶ 63. Frey alleges

that there was no legal basis for this position. *Id*. Frey also alleges that in June 2018,

he sent a letter to then-Attorney General Jeff Sessions informing him of the alleged

fraud with respect to the Settlement Claims. *Id*. at ¶ 64.

## II.    THE STANDARD FOR MOTIONS TO DISMISS.

A court may dismiss a complaint for a "failure to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion

to dismiss, a complaint "does not need detailed factual allegations," but must provide

the plaintiff's grounds for entitlement to relief—including factual allegations that

when assumed to be true "raise a right to relief above the speculative level." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The

plausibility standard "is not akin to a 'probability requirement," though it does

require more than simply a "sheer possibility" that a defendant has acted unlawfully.

*Id*. at 678. Thus, a pleading need not contain detailed factual allegations, but must

set forth more than "labels and conclusions, and a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs.'" *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 (5th Cir. 2021) (quoting *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)). A court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Boudreaux v. Axiall Corp.*, 564 F. Supp. 3d 488, 498 (W.D. La. 2021). Importantly, the court should not evaluate the merits of the allegation but must satisfy itself only that the plaintiff has adequately pled a legally cognizable claim. *Bright v. City of Killeen, Texas*, 532 F. Supp. 3d 389, 396 (W.D. Tex. 2021) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

When alleging fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake." Rule 9(b)'s particularity requirement has long played a screening function, standing as a "'gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.'" *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1116

(S.D. Tex. 2020) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)). Complaints alleging a violation of the FCA come within the auspices of Rule 9(b). *United States ex rel. Monsour v. Performance Accts. Receivable, LLC*, No. 116CV00038HSOBWR, 2022 WL 16840338, at *4 (S.D. Miss. Nov. 9, 2022) (citing *Grubbs*, 565 F.3d at 185).

## III.    REQUIREMENTS OF THE FALSE CLAIMS ACT.

The FCA imposes liability on any person who knowingly submits or causes to be submitted a false claim for payment of Government funds, knowingly makes or causes to be made a false record or statement material to a false claim or conspires to commit any such violation. 31 U.S.C. § 3729(a)(1)(A)–(C). The FCA also imposes liability on any person who knowingly makes or causes to be made a false record or statement material to an obligation to transmit money to the Government or knowingly conceals an obligation to transmit money to the Government. *Id.* § 3729(a)(1)(G).

To determine liability under the FCA, courts must ask whether: "'(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (quoting *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 (5th Cir. 2017)). "The

FCA may be enforced not just through litigation brought by the Government itself, but also through civil qui tam actions that are filed by private parties, called relators, in the name of the Government." *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 653 (2015) (quotations omitted).

"'In a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.'" *United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 618 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019) (quoting *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004)). Therefore, a reverse false claim is where any person "us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

## IV.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Defendants[4] argue that the amended complaint must be dismissed because the

---

[4] In 2008, the CMS awarded a contract to CGI Technologies and Solutions Inc. In 2009, CGI Technologies and Solutions Inc. novated that contract to its wholly owned subsidiary CGI Federal Inc. ("CGI Federal"). The Original and First Amended Complaints, ECF Nos. 1 and 25, respectively, named CGI Technologies and Solutions Inc. as a defendant in the instant lawsuit. In

alleged Settlement Claims are subject to the FCA's public disclosure bar and the Unearned Contingency Fee Claims fail to satisfy the requirements of Rule 9(b). Defendants also argue that Frey fails to plead scienter for both the Settlement Claims and the Unearned Contingency Fee Claims. Finally, Defendants argue that the conspiracy claims should be dismissed for failure to state a claim. The Court addresses each of these issues in turn, starting with whether the public disclosure bar applies to the Settlement Claims.

### A. The Settlement Claims Should Be Dismissed Pursuant To The Public Disclosure Bar.

Defendants argue that the Settlement Claims are barred because they are based on publicly disclosed information.[5] Specifically, Defendants contend that the Technical Direction Letters and Defendant Cotiviti's Annual Report, on which the amended complaint relies, provide the information necessary to formulate the Settlement Claims. ECF No. 42-2 at 25-26. Frey responds that the public disclosure bar is inapplicable because he is an original source. The Court finds that the Settlement Claims should be dismissed because the information in the amended

---

response to CGI Technologies and Solutions Inc.'s motion to dismiss, Def.'s Mot. Dismiss, ECF No. 41, Rey filed a motion to amend the First Amended Complaint and Substitute CGI Federal as Defendant for CGI Technologies and Solutions Inc. and dismiss CGI Technologies and Solutions Inc. as a Defendant. Pl.'s Mot. Am., ECF No. 51. The Court granted the motion to amend and instructed the parties that they need not refile any motions to dismiss in light of the substitution. Order, ECF No. 53.

[5] Defendants also argue that the Unearned Contingency Fee Claims are subject to the public disclosure bar. ECF No. 42-2 at 25-27. However, the Court does not reach that argument because it finds dismissal of those claims is appropriate on other grounds.

complaint does not materially add to the publicly available information upon which they are based.

### 1.   *The Public Disclosure Bar to the False Claims Act.*

To "strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits" that result in a windfall to relators, the FCA includes a public disclosure bar. *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010). The public disclosure bar was amended in 2010 through the Patient Protection and Affordable Care Act. *Abbott*, 851 F.3d at 387 n.2. Importantly, the amendment changed the public disclosure bar from jurisdictional to non-jurisdictional in nature. *Id*. Under the public disclosure bar, a court must dismiss an action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" and relator does not qualify as an original source. 31 U.S.C. § 3730(e)(4).[6] In the Fifth Circuit, courts apply a three-part test to determine if a claim is subject to the public disclosure bar, which asks 1) whether there has been a public disclosure of allegations or transactions, 2) whether the qui tam action is based upon such publicly disclosed allegations, and 3) if so, whether the relator is the original source of the information.

---

[6] A challenge under the public disclosure bar can be evaluated as a 12(b)(6) motion to dismiss or a motion for summary judgment. *See, e.g., United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*, No. 17-CV-1249, 2019 WL 5970283, at *8–12 (W.D. Tex. Nov. 13, 2019) (motion to dismiss); *United States ex rel. Monsour v. Performance Accts. Receivable, LLC*, No. 16-CV-38, 2018 WL 4682343, at *14–15 (S.D. Miss. Sept. 28, 2018) (summary judgment).

*United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021) (citing *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011)).

Frey acknowledges that the Technical Direction Letters and Defendants' SEC filings were publicly disclosed, conceding this argument. ECF No. 50 at 25. He contends, however, that the public disclosure bar is not applicable because he is an original source. *Id*.

### 2. *Frey Is Not An Original Source.*

An "original source" is a person "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). "To be an original source, a person must have direct and independent knowledge of the information on which the allegations are based." *United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 374 (5th Cir. 2017) (citing *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 292 (5th Cir. 2012)). "If someone relies upon the public disclosures at issue, then his or her knowledge is not independent." *Id*. (citing *United States ex rel. Fried v. West Indep. Sch. Dist.*, 527 F.3d 439, 442-43 (5th Cir. 2008)).

As Frey concedes that the Settlement Claims are based on a public disclosure, ECF No. 50 at 25, his Settlement Claims must be dismissed unless the Court finds

that he is an original source.[7] Defendants assert that the following was publicly disclosed: (1) CMS entered into a settlement in 2014; (2) CMS then issued Technical Direction Letters to Defendants seeking the return of contingency fees pursuant to a settlement; and (3) Defendants took the position that they were not obligated to return those allegedly unearned contingency fees. ECF No. 42-2 at 21 (citing ECF No. 55 at ¶ 63). To be an original source, Frey must "show that the information and allegations he discovered were 'qualitatively different information than what had already been discovered' and not merely the 'product and outgrowth' of publicly disclosed information." *U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 591 (S.D. Tex. 2015) (*quoting United States ex rel. Lockey v. City of Dallas*, 576 F. Appx. 431, 437 (5th Cir. 2014)).

Frey contends that he is an original source because "his personal knowledge of the Defendants' business practices [] bridge the gap between the publicly available information about the [settlement] and the fraud behind the Defendants' refusal to return the unearned contingency fees to the Government." ECF No. 50 at 27. However, Frey does not identify any "additional compelling fact, or [] a new

---

[7] According to Frey, he satisfies the pre-filing disclosure requirement because he provided information regarding the Settlement Claims to the Government before filing this action. ECF No. 55 at ¶ 64. Defendants argue that the requirement is not satisfied because Plaintiff provided the information to the government after the relevant public disclosures. ECF No. 42-2 at 28-29. Defendants' argument is unavailing because the only temporal requirement is that Plaintiff "voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730 (e)(B).

and undisclosed relationship between disclosed facts" in response to Defendants'
motions. *Colquitt*, 858 F.3d at 376 (quoting *United States ex rel. Reagan v. E. Tex.
Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 179 (5th Cir. 2004)). The Court was
also unable to identify such information. In fact, the only addition the amended
complaint makes to the publicly available information is Frey's assertion that
Cotiviti's behavior was fraudulent and, without supplying any factual basis, that all
other Defendants took the same actions as Cotiviti. ECF No. 55 at ¶ 63. This falls
far short of what is required to qualify as an original source.

It is apparent that Frey has failed to meet his burden when comparing the
circumstances presented here with those in *U.S. ex rel. Springfield Terminal Ry. Co.
v. Quinn*, 14 F.3d 645, 657 (D.C. Cir. 1994), a case upon which Frey relies.[8]   In
*Springfield*, the public disclosures were billing records and telephone records that
were "innocuous in their own right." *Id*. at 648. The relator then "bridged the gap by
[its] own efforts and experience, which in th[at] case included personal knowledge
of the arbitration proceedings and interviews with individuals and businesses
identified in the telephone records." *Id.* at 657. These efforts revealed that the
arbitrator could not have performed the services that he billed the Government for,
and, therefore, the fraud. *Id*. at 648. Here, Relator has not presented similar

---

[8] Frey also argues that *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923 (D.C. Cir. 2017)
supports his argument. But in that case, the *Shea* court found that "Shea did not base his allegations
of fraud on publicly available information" rather than finding him an original source. *Id*. at 932.
Therefore, *Shea* is inapplicable.

circumstances.

Because the Settlement Claims do not provide additional compelling facts or a new and undisclosed relationship between disclosed facts, Frey is not an original source, and the Settlement Claims should be dismissed.

### B. Frey Fails To Plead The Unearned Contingency Fee Claims With the Particularity Required By Rule 9(b).

Under Rule 9(b), plaintiffs are required to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). What constitutes 'particularity' will necessarily differ with the facts of each case, "at a minimum 'Rule 9(b) requires the who, what, when, where, and how to be laid out.'" *Bowles v. Mars, Inc.*, No. 4:14-CV-2258, 2015 WL 3629717, at *3 (S.D. Tex. June 10, 2015) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003)).

Courts have "'relaxed Rule 9(b)'s pleading standard where the alleged fraud occurred over an extended period of time and consists of numerous acts.'" *U.S. ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *10 (S.D. Tex. June 12, 2014), *on reconsideration in part sub nom. Ruscher v. Omnicare Inc.*, No. 4:08-CV-3396, 2014 WL 4388726 (S.D. Tex. Sept. 5, 2014) (quoting *United States ex rel. Foster v. Bristol–Myers Squibb Co.*, 587 F.Supp.2d 805, 821 (E.D. Tex. 2008)). However, "even where courts have adhered to a relaxed Rule 9(b) standard, they have not budged from the basic rule that the complaint must include

a 'sufficient factual basis for [Plaintiff/Relator's] belief.'" *Id*. at *11 (quoting *Foster*, 587 F. Supp. 2d at 822). Where, as here, a relator's complaint does not "'allege the details of an actually submitted false claim, [it] may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id*. at *3 (quoting *Grubbs*, 565 F.3d at 190).

Defendants contend that Frey has failed to "provide the who, what, when, and where of fraud that is necessary to satisfy Rule 9(b). ECF No. 41 at 10-11. Frey responds that he has provided this information in a "succinct yet informative manner." ECF. No. 50 at 13. Because the amended complaint does not allege the details of any individual false claim, the Court analyzes Frey's allegations under the *Grubbs* standard to determine if Frey's allegations supporting the Unearned Contingency Fee Claims coupled particular details of a scheme with reliable indicia leading to a strong inference that false claims were actually submitted. *Grubbs*, 565 F.3d at 190.

### 1. *Frey fails to plead particular details of the alleged schemes.*

The requirements of Rule 9(b) must be met as to each Defendant, and it is "impermissible to make general allegations that lump all defendants together." *In re Parkcentral Glob. Litig.*, 884 F.Supp.2d 464, 470-71 (N.D. Tex. 2012); *accord United States v. Kindred Healthcare, Inc.*, No. 1:18-CV-00806-RP, 2020 WL

7771217, at *6 (W.D. Tex. Dec. 30, 2020), *report and recommendation adopted*, No. 1:18-CV-806-RP, 2021 WL 8083348 (W.D. Tex. Jan. 29, 2021) (dismissing complaint in part because it employed group pleading that "does not satisfy the heightened pleading requirements of Rule 9(b)").

Notwithstanding the prohibition on group pleading, this is precisely what Frey does in his amended complaint. Frey identifies the who as "HMS, Cotiviti, Performant and CGI, through their respective RAC [Auditor] divisions and subsidiaries," generally referring to them as "Defendants" or "RACs" throughout the amended complaint. ECF No. 55 at ¶¶ 24, 71. Essentially, Frey identifies four corporations in their entirety as the perpetrators of the alleged fraud, alleging that all Defendants participated in the alleged schemes from the beginning of his employment with HMS through the present. These "general allegations" do not rise to the level of providing particular details of a scheme by each Defendant. *Colquitt*, 864 F. Supp. 2d at 534 (finding that relator failed to provide "particular details of a scheme by Boston Scientific" where "only allegations applicable to Boston Scientific pertain to 'Defendants' generally").

Beyond lumping the four corporate Defendants together, Frey also fails to "provide even a representative example of an individual involved in the fraudulent scheme." *Gregory v. Houston Indep. Sch. Dist.*, No. CV H-14-2768, 2016 WL 5661701, at *5 (S.D. Tex. Sept. 30, 2016) (finding that plaintiff failed to satisfy Rule

9(b) on this basis); *see also United States ex rel. King v. Alcon Labs., Inc.,* 232 F.R.D. 568, 572 (N.D. Tex. 2005) (finding that even under a relaxed pleading standard, the relators failed to plead fraud with particularity because the relator did not identify a single person involved in the alleged fraud). Only a single individual is even identified in the amended complaint, HMS's Chief Executive Officer, Bill Lucia. ECF No. 55 at 27. However, Frey does not allege that Mr. Lucia was aware of or participated in the Unearned Contingency Fee Claims alleged in the amended complaint. *Id*. Instead, the amended complaint alleges only that Mr. Lucia "had been looking for a buyer for HMS for a number of years, which led to numerous discussions and interactions with other players in the industry." *Id*. This falls short of identifying the individuals who were involved in implementing the allegedly fraudulent scheme. *Cf. Ruscher*, 2014 WL 2618158, at *14 (finding that the who was adequately pleaded where plaintiff alleged the role the CEO "and others on his senior management team played").

In addition to failing to properly plead the "who", the amended complaint also lacks necessary details regarding the "what" and "how" of the alleged schemes, instead relying on "wholly generalized allegations." *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 895 (5th Cir. 2013) (quotation marks and citations omitted). Frey does not provide any "representative examples of specific fraudulent acts conducted pursuant to" the schemes alleged. *U.S. ex rel.*

*Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 768 (S.D. Tex. 2010) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509–10 (6th Cir. 2007)). For each of the schemes alleged in the amended complaint, the information Frey provides is limited to a conclusory description of how such a scheme *might* work and provides no details regarding how the alleged scheme was in fact carried out.

An examination of Frey's Error Rate Claims is instructive. Frey alleges that Defendants applied a false error rate to certain providers' submissions to wrongfully collect contingency fees. ECF No. 55 at ¶ 56. However, Frey does not identify the individual(s) responsible for applying the error rate or even the department within each Defendant responsible for doing so. Frey does not identify how the error rate would be applied, i.e., via automated program or manually by staff. Frey does not identify a single provider Defendants targeted. Frey does not identify the false error rate applied, providing only a hypothetical example. *Id.* ("for example, 20%"). Of course, hypothetical examples are not sufficient to satisfy Rule 9(b)'s particularity requirement. *Nunnally*, 519 F. App'x at 894 (rejecting example in plaintiff's complaint because plaintiff did "not even indicate that these amounts are real rather than hypothetical"). Finally, although Frey asserts that Defendants would apply a false error rate to certain types of claims, he does not identify what any of those types of claims were.

### 2. Frey fails to provide reliable indicia that lead to a strong inference Defendants improperly avoided an obligation to pay the Government.

A relator must also allege reliable indicia that lead to a strong inference Defendants improperly avoided obligations to pay the Government. *Grubbs*, 565 F.3d at 190. Even if Frey had pleaded particular details of the alleged scheme, he does not provide the "reliable indicia" needed to satisfy the requirements of Rule 9(b).

In *Grubbs*, the Fifth Circuit found that the relator provided reliable indicia to support his allegations where "the particular workings of a scheme [were] communicated directly to the relator by those perpetrating the fraud," and the relator "describe[d] in detail, including the date, place, and participants, the dinner meeting at which two doctors . . . attempted to bring him into the fold of their on-going fraudulent plot." 565 F.3d at 191-92. The *Grubbs* relator also corroborated this allegation with descriptions of a meeting with nurses who tried to help him carry out the scheme, along with specific dates on which "each doctor falsely claimed to have provided services to patients." *Id*. at 192.

In contrast, Frey simply asserts that "[t]hroughout the course of his employment with HMS, Relator became aware of a number of different ways in which HMS knowingly collected unearned contingency fees and failed to repay them to CMS." ECF No. 55 at ¶ 47. In his description of the schemes, Frey does not

allege that anyone communicated the workings of the alleged fraud to him. *See Grubbs*, 565 F.3d at 191. Nor does Frey allege that he reviewed internal documents evidencing the fraud. *See U.S. ex rel. Jamison v. McKesson Corp.*, No. 208CV214 SA DAS, 2009 WL 3176168, at *6 (N.D. Miss. Sept. 29, 2009), *on reconsideration*, No. 2:08CV214-SA-DAS, 2010 WL 1223876 (N.D. Miss. Mar. 25, 2010) (finding that "excerpted quotation from internal memoranda as well as referenced specific documents" were reliable indicia). Frey also does not provide any documents relating to the alleged schemes. *See United States v. Cath. Health Initiatives*, No. 4:18-CV-123, 2022 WL 2657131, at *10 (S.D. Tex. Mar. 31, 2022*), report and recommendation adopted sub nom. Chihi v. Cath. Health Initiatives*, No. 4:18-CV-00123, 2022 WL 2652135 (S.D. Tex. July 8, 2022) (finding reliable indicia satisfied where relator provided "billing polices, invoices, and checks related to the alleged scheme"). Instead, Frey offers only conclusory allegation describing the various "scenarios," in which he contends Defendants engaged in fraud. ECF No. 55 at ¶ 55. This is not sufficient. *See Nunnally*, 519 F. App'x at 895 (affirming dismissal of claims where "allegations of a scheme to submit fraudulent claims are entirely conclusory"); *United States ex rel. Hendrickson*, 343 F. Supp. 3d at 635 (finding that conclusory allegations were not sufficient to support a finding that relator had provided reliable indicia).

Furthermore, even if Frey were to provide some reliable indicia from when he

was employed at HMS, dismissal would still be warranted for the period postdating his employment. *See Ruscher*, 2014 WL 2618158, at *16 (dismissing allegations for time period outside of relator's employment where allegations were supported by "nothing more than extrapolation and good faith belief").

The insufficiency of Frey's allegations is even more apparent with regard to the Defendants for whom he did not work. Frey does not allege that he has any actual first-hand or second-hand knowledge that the other Defendants engaged in fraud. The basis upon which Frey alleges that the other Defendants engaged in fraud is that "each of the [Auditors] was able to learn from and imitate one another's practices." ECF No. 55 at ¶ 67. Therefore, according to Frey, if HMS engaged in fraud, all Defendants did so as well. This is pure speculation and falls far short of leading the Court to a strong inference that false claims were submitted.

In part, Rule 9(b)'s purpose is "prevent[ing] nuisance suits and the filing of baseless claims as a pretext to gain access to a "fishing expedition." *Grubbs*, 565 F.3d at 191. If Frey's suit were allowed to proceed, he would be entitled to discovery into essentially all contingency fees four corporations earned over an eleven-year span. This is far from the "small pond that is either stocked or dead" the Fifth Circuit contemplated in *Grubbs*. *Id*. "Rule 9(b) prohibits access to such a vast expanse of claims without substantially more particularized pleadings" than those presented here. *Hendrickson*, 343 F. Supp. 3d at 635 (dismissing FCA claims where relator

failed to provide reliable indicia).

Frey failed to provide details of a scheme or reliable indicia that Defendants improperly avoided an obligation to pay the Government. Therefore, the Unearned Contingency Fee Claims should be dismissed.

### C. Frey Fails To Plead Scienter.

To establish scienter, a relator must allege that defendants acted "knowingly." 31 U.S.C. § 3729(a)(1)(G). The FCA defines "knowing" and "knowingly" to mean that a person (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i), (ii), (iii). "Allegations of scienter may be averred generally, but simple allegations of fraudulent intent will not suffice, and 'plaintiffs must set forth specific facts supporting an inference of fraud.'" *In re Parkcentral Glob. Litig.*, 884 F.Supp.2d at 471 (quoting *Litson-Gruenber v. JPMorgan Chase & Co.*, Civ. A. No. 7:09-CV-056-o, 2009 WL 4884426, at *4 (N.D. Tex. Dec. 16, 2009)).

Even if Frey's Settlement Claims were not subject to the public disclosure bar and his Unearned Contingency Fee Claims were pleaded with particularity, dismissal would still be required because Frey fails to plead scienter. Defendants argue that Frey fails to plead scienter because he engages in group pleading and his allegations of scienter are limited to conclusory assertions. Frey responds that he

pleads scienter because Defendants did not have systems and procedures in place to prevent fraud and did not respond to the government's Technical Direction Letters. Both of Frey's arguments fail. ECF No. 50 at 20-21.

First, the amended complaint does not contain any allegations regarding Defendants' lack of systems or procedures to prevent fraud. "[T]he law is well-settled that arguments in a brief are not a substitute for properly pleaded allegations." *Davis v. La. State Univ. & A&M Coll.*, No. CV 18-614-SDD-RLB, 2019 WL 179580 (M.D. La. 2019). Therefore, the Court declines to consider this argument based on facts not included in the amended complaint.

Second, Frey's contention that "Defendants' failures to respond to the Technical Direction Letters" demonstrates deliberate ignorance or willful disregard is unintelligible. ECF No. 55. Frey provides no explanation, much less citation to supporting caselaw, for how failing to respond to the Technical Direction Letters would show scienter. Moreover, the Cotiviti Holdings, Inc. Annual Report upon which Frey's amended complaint relies does not support the allegation that Defendants did not respond to the Technical Direction Letters. To the contrary, the Cotiviti Annual Report provides that "we have disputed CMS's findings based on our interpretation of the terms of the Medicare RAC contract and our belief that the backup data provided by CMS is inaccurate and/or incomplete." Cotiviti Holdings, Inc. Annual Report (Form 10-K) at 100 (Feb. 22, 2018), *available at*

https://www.sec.gov/Archives/edgar/data/1657197/000155837018000958/cotv-

20171231x10k.htm. Based on Cotiviti's response, it did not return the contingency

fees as directed pursuant to its interpretation of the contract and issues with the data

CMS provided supporting its request. Disputed legal issues cannot form the basis

for finding that a contractor acted with knowledge in violation of the FCA. *Longhi*,

513 F. Supp. 2d at 876 (noting that "Courts have consistently found that innocently-

made faulty calculations, flawed reasoning, and disputed legal issues arising from

vague provisions or regulations cannot support liability under the FCA.").

In any case, Frey's "vague group pleading approach cripples his ability to

establish scienter." *Hendrickson*, 343 F. Supp. at 636. "Rule 9(b) requirements must

be met as to each defendant. It is impermissible to make general allegations that

lump all defendants together; rather, the complaint must segregate the alleged

wrongdoing of one from another." *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d

464 at 470–71.

Furthermore, the only allegation in the amended complaint supporting

scienter is that Defendants are "large and sophisticated companies" that "were or

should have been aware of the requirements of . . . their contracts" and "wrongful

collection of unearned contingency fees and refusal to repay them to the Government

at best constitutes reckless disregard and deliberate ignorance of their obligations."

ECF No. 55 ¶ 45. However, the conclusory allegation that Defendants must have

known by virtue of their size and sophistication is not a substitute for pleading facts supporting an inference of fraud. *See United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 200 (4th Cir. 2022) (affirming district court's finding that relator failed to plead scienter when they offered only conclusory allegations).

Thus, the FCA claims should be dismissed.

### D. Relator's Conspiracy Allegations Should Be Dismissed.

Frey alleges that Defendants conspired together to violate the FCA. ECF No. 55 at ¶¶ 76-80. General civil conspiracy principles apply to FCA-based conspiracy actions. *U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 201 (D.D.C. 2011). An important civil conspiracy principle is that "when plaintiffs fail to state a claim for any underlying tort, their claims for civil conspiracy likewise fail." *Tummel v. Milane*, 787 F. App'x 226, 227 (5th Cir. 2019) (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 752 (5th Cir. 2019)). In the context of the FCA, this means that there can be no liability for conspiracy where there is no underlying violation of the FCA. *U.S. ex rel. Coppock v. Northrup Grumman Corp.*, No. CIV.A. 3:98-CV-2143, 2003 WL 21730668, at *14 n.17 (N.D. Tex. July 22, 2003) (dismissing conspiracy component of complaint because underlying claim was dismissed); *United States ex rel. Amin v. George Washington Univ.*, 26 F.Supp.2d 162, 165 (D.D.C. 1998) (dismissing a conspiracy action because, among other things, the alleged fraudulent actions of defendants were "entirely lawful" and did not violate

the FCA). Therefore, because Frey's underlying FCA claim should be dismissed, his conspiracy claim should be dismissed as well.

Moreover, a claim for conspiracy to violate the FCA requires Plaintiff to plead "the existence of an unlawful agreement between defendants" and "at least one act performed in furtherance of that agreement." *United States v. Medoc Health Servs. LLC*, 470 F. Supp. 3d 638, 658 (N.D. Tex. 2020). Frey alleges that "Defendants coordinated their activities and approaches to facilitate their wrongful collection of unearned contingency fees and their failure to return to them to the Government." ECF No. 55 at ¶ 78. However, this conclusory allegation does not satisfy the requirement to plead the agreement and overt acts with particularity. *United States v. Dental Health Programs, Inc.*, No. 3:18-CV-00463-E, 2020 WL 3064712, at *15 (N.D. Tex. June 8, 2020) (dismissing FCA conspiracy claims were plaintiff failed to plead conspiracy claims with sufficient particularity). Frey has failed to allege any facts to show that any agreement existed. He cites no meetings of the Defendants, no emails or correspondence setting out the terms of their agreement, and no conversations discussing the agreement. Thus, Frey's conspiracy allegations are not sufficient to satisfy Rule 9(b)'s particularity requirement and should be dismissed on that basis as well.

### E. The Court Should Not Grant Leave to Amend.

Frey seeks leave to amend should the Court find any of his allegations

deficient. ECF No. 50 at 28. Rule 15 of the Federal Rules of Civil Procedure directs courts to "freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). However, leave to amend is within the sound discretion of the court and can be appropriately denied when "it is clear that the defects [of a complaint] are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In fact, courts frequently deny leave when a party fails to submit a proposed pleading or explain how he can cure any defects. *See Smith v. Hittner*, No. 4:21-CV-3079, 2022 WL 2373718, at *2 (S.D. Tex. Feb. 3, 2022), *report and recommendation adopted*, No. 4:21-CV-03079, 2022 WL 2359644 (S.D. Tex. June 30, 2022) (citing *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254-55 (5th Cir. 2003)).

Frey has not explained how he would cure the deficiencies described above or how he could otherwise avoid dismissal under the public disclosure bar. Nor has Frey submitted a proposed third amended complaint. Therefore, Frey has provided the Court with no basis to believe that further amendment would be fruitful. Additionally, Frey has already been afforded the opportunity to amend his complaint twice.

Furthermore, it is relevant that Frey is a serial litigant, having previously brought two *qui tam* actions against HMS. *See United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-CV-0920-B, 2021 WL 4502275, at *3 (N.D. Tex. Oct. 1,

2021) (describing how the Government declined to intervene in either case); *see also Gibson v. Brown*, No. 12-CV-622 KAM RLM, 2012 WL 1744845, at *7 (E.D.N.Y. May 16, 2012) (declining leave to amend in part because of plaintiff's history as a serial litigant). Although some of Frey's claims survived the motion to dismiss phase in his prior *qui tam* litigation, *United States v. Health Mgmt. Sys., Inc.*, No. 3:19-CV-0920-B, 2022 WL 976161, at *24 (N.D. Tex. Mar. 31, 2022), the claims asserted concerned HMS's practices regarding *Medicaid*—the area in which Frey worked, ECF No. 55 at ¶ 2. That court found Relator sufficiently alleged violations of the FCA against his former employer, HMR. *Health Mgmt. Sys.*, 2022 WL 976161, at *6. However, there Relator gave specific examples of the fraudulent conduct and alleged he raised his concerns throughout his employment with senior management, including specified executives, who never acted to fix the problems he identified. *Id.* at 2. In contrast, his claims here concern the *Medicare* program, an area in which he did not work. Moreover, here Frey has failed to allege facts showing that he had any access to or personal knowledge of HMS's administration of the Medicare program while he was employed there between 2006 and 2013. Further, his claims are based on alleged violations through the present and primarily involve the ten years after his termination from HMS, a time period for which he would not have had access to any inside information for HMS. *See Ruscher*, 2014 WL 2618158, at *16 (limiting claims to time period Relator was employed).

In addition to being outside his area, Frey's claims here also allege FCA violations on the part of three other companies for whom he did not work. Again, his amended complaint and response to the motion do not contain any facts showing that he had personal knowledge about those companies' operations. Frey's failure to identify individuals involved in the alleged fraud, documents supporting his allegations of fraud, or other specific facts supporting his allegations of FCA violations and conspiracy underscores the finding that amending would be futile.

Based on this record, the Court finds amendment of the complaint would be futile and recommends dismissing the amended complaint with prejudice. *Vaughn v. Harris Cnty. Hosp. Dist.*, No. 4:17-CV-02749, 2022 WL 1165146, at *3 (S.D. Tex. Apr. 20, 2022) (dismissing FCA complaint with prejudice where court determined amendment would be futile).

## V.   CONCLUSION

The Court recommends that Frey's Second Amended Complaint, ECF No. 55, be **DISMISSED WITH PREJUDICE.**

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

Signed on February 10, 2023, at Houston, Texas.

_Dena Palermo_

**Dena Hanovice Palermo**
**United States Magistrate Judge**